UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
LASHAWN BURGESS,

                                                    Plaintiff,

          -against-
                                                                    15-CV-5525
CITY OF NEW YORK,                                                   (RRM)(MDG)
VINCENT AGOSTINO, Individually,
MICHAEL DICECCO, Individually, and
RICKY ALEXANDER, Individually,

                                                    Defendants.

--------------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


                                        LEVENTHAL LAW GROUP, P.C.
                                        *Attorneys for Plaintiff*
                                        45 Main Street, Suite 528
                                        Brooklyn, New York 11201
                                        (718) 556-9600

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES …………………………………………………..   iii

PRELIMINARY STATEMENT……………….…………………...………...   1

FACTUAL BACKGROUND…………………………………………………..   2

ARGUMENT……………………………………………………………………   6

SUMMARY JUDGMENT STANDARD…………………………….…………   6

POINT I …………………………………………………………   7

MATERIAL ISSUES OF FACTS PRECLUDE
SUMMARY JUDGMENT FOR DEFENDANTS
ON PLAINTIFF'S FALSE ARREST CLAIM……………   7

POINT II ...…………………………………………………..   12

PLAINTIFF HAS ESTABLISHED A VALID
CLAIM FOR DEPRIVATION OF THE RIGHT
TO A FAIR TRIAL AGAINST ALL THE NAMED
DEFENDANTS…………….…………………………….   12

POINT III …………………………………………….…………   19

PLAINTIFF HAS ESTABLISHED A VALID
MALICIOUS PROSECUTION CLAIM
AGAINST ALL THE NAMED DEFENDANTS...…………   19

POINT IV …………….…………………………….……………   22

PLAINTIFF HAS COMPLIED WTH NEW YORK'S
GENERAL MUNICIPAL LAW AND HIS STATE
LAW CLAIMS SHOULD NOT BE DISMISSED…………   22

i

CONCLUSION ………………………………………………………...……………. 23

# TABLE OF AUTHORITIES

**Cases**

*Amore v. Novarro*, 624 F.3d 522 (2d Cir. 2010)............................................................ 12

*Bailey v. City of New York*, 79 F.Supp.3d 424 (E.D.N.Y. 2015)................................... 22

*Blake v. City of New York*, 148 A.D.3d 1101 (2d. Dept March 29, 2017).................... 23

*Brady v. Town of Colchester*, 863 F.2d 205 (2d Cir. 1988).......................................... 7

*Breeden v. City of New York*, 2014 U.S. Dist. LEXIS 4165 (E.D.N.Y. 2014). ........... 19

*Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)............................................................... 15

*Cameron v. City of New York*, 598 F.3d 50 (2d.Cir. 2010) ......................................... 20

*Chambers v. TRM Copy Centers Corp*., 43 F.3d 29 (2d Cir. 1994) ............................. 6

*Chimurenga v. City of New York*, 45 F.Supp.2d 337 (S.D.N.Y. 1999) .................. 19, 21

*Coggins v. Buonora,* 776 F.3d 108 (2d Cir. 2015) ................................................. 15, 16

*Douglas v. City of New York*, 595 F.2d 333 (S.D.N.Y. 2009)....................................... 19

*Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. Sept. 30, 2016) .................... passim

*Garnett v. Undercover Officer C0039*, 2015 U.S. Dist. LEXIS 45232 (S.D.N.Y. 2015)............ 17

*Gomez v. City of New York*, 2016 U.S. Dist. LEXIS 110841 (E.D.N.Y 2016) ........... 17

*Hewitt v. City of New York*,  2012 U.S. Dist LEXIS 141067 (E.D.N.Y 2012)........... 13

*Howard v. Schoberle*, 907 F.Supp. 671 (S.D.N.Y. 1995)............................................. 6

*Jovanovic v. City of New* York, 486 F.Appx 149 (2d Cir. 2012).................................. 14

*Maliha v. Faluotico*, 286 Fed. Appx. 742 (2d Cir. 2008) ............................................ 13

*Maliha v. Faluotico*, 2007 U.S. Disr. LEXIS 13602 (N.D.N.Y. 2007) ....................... 13

*Manganiello v. City of New Y*ork, 612 F.3d 149 (2d Cir. 2010)................................... 20

*Matsushita Elec. Indus. Co., Lit. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................ 6

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) ............................................................. 7

*Nnodimele v. Derienzo,* 2016 U.S. Dist. LEXIS 83357 (E.D.N.Y 2016) .............................. 17, 18

*Pena v. State of New York*, 4-CV-9499 (DAB) (HBP), ECF Doc. 22 (Report and

    Recommendation) (S.D.N.Y. 2008) ................................................................. 10, 11

*Perez v. Duran*, 962 F.Supp.2d 533 (S.D.N.Y. 2013) .................................................. 8

*Rehberg v. Paulk,* 566 U.S. 366 (2012) ................................................................. 15

*Rhooms v. City of New York,* 2017 U.S. Dist. LEXIS 49538 (March 31, 2017) ....................... 18

*Ricciuti v. New York City Transit Auth.,* 124 F.3d 123 (2d Cir. 1997) ................................ 18

*Rolon v. Henneman*, 443 F.Supp.2d 532 (S.D.N.Y. 2006) ........................................... 13

*Rucks v. City of New York,* 96 F.Supp.3d 138 (S.D.N.Y. 2015) ..................................... 17

*Sam v. Brown*, 2002 U.S. Dist. LEXIS 17714 (E.D.N.Y. 2002) ...................................... 10

*Smith v. City of New York*, 2010 U.S. Dist. LEXIS 88774 (S.D.N.Y. 2010) ...................... 10, 21

*Soomro v. City of New York*, 174 F.Supp.3d 806 (S.D.N.Y. 2016) ................................... 17

*Tretola v. D'Amico*, 2014 U.S. Dist. LEXIS 89601 (E.D.N.Y. 2014) ................................. 20

*United States v. Roland*, 2012 U.S. Dist. LEXIS 2899 (S.D.N.Y. 2012) ............................. 10, 11

*Waddington v. City of New York*, 971 F.Supp.2d 286 (E.D.N.Y.2013) ............................... 13

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) ........................................................ 6, 7

*Williams v. City of New York*, 2003 U.S. Dist. LEXIS 19078 (S.D.N.Y. 2003) ...................... 19

*Wu v. City of New York*, 934 F.Supp. 581 (S.D.N.Y. 1996) ......................................... 7

*Ybarra v. Illinois*, 444 U.S. 85 (1979) ............................................................... 8

**Statutes**

42 U.S.C. § 1983 ................................................................................................... 11, 15

Fed R. Civ. P. 56 ...................................................................................................... 1,9

2d Cir. Local Rule 32.1.1 ........................................................................................... 13

N.Y. Gen. Mun. Law § 50 ......................................................................................... 22

## PRELIMINARY STATEMENT

Plaintiff Lashawn Burgess respectfully submits this Memorandum of Law in opposition to defendants' motion for summary judgment pursuant to Rule 56. Defendants' motion should be denied because there are clear disputes of the material facts which resulted in plaintiff's arrest on February 28, 2014.

According to plaintiff, on February 28, 2014 at approximately 9:00 p.m., plaintiff saw an acquaintance, Leroy Miller in the vicinity of Park Avenue and Church Street in Staten Island. They shook hands, had a short conversation and then began to walk away from each other when the defendant police officers arrived at the location. The defendants stopped and searched both plaintiff and Mr. Miller. The defendants recovered two bags of cocaine from Mr. Miller but did not recover any contraband from plaintiff. According to plaintiff and Mr. Miller, plaintiff did not hand anything to Miller, and Miller did not hand anything to plaintiff. According to Mr. Miller, he purchased the cocaine from another individual at another location.

According to defendants Agostino and Dicecco, they observed plaintiff hand something to Mr. Miller and Miller hand United States currency to plaintiff. According to defendant Alexander, he only observed plaintiff hand something to Mr. Miller. Thereafter the defendants recovered two bags of cocaine from Mr. Miller and a sum of United States currency from plaintiff.

Despite this clear dispute as to what transpired between plaintiff and Mr. Miller, defendants have moved for summary judgment, requesting that this Court adopt their version of the disputed facts. As there is a clear dispute concerning the material facts, defendants' motion for summary judgment should be denied.

## FACTUAL BACKGROUND

On February 28, 2014, at approximately 9:00 p.m., plaintiff saw an acquaintance, Leroy Miller, near the intersection of Park Avenue and Church Street in Staten Island.  (*See* Plaintiff Lashawn Burgess's Deposition, dated September 7, 2016 ("Pl. Dep. II"), annexed to the Declaration of Jason Leventhal ("Leventhal Decl.") Exhibit ("Ex.") A at 55:20 – 56:23).  The two men shook hands, spoke for approximately five minutes and then walked away from each other without shaking hands goodbye.  (*See* Pl. Dep. II, Ex. A at 57:1 -11; 58:7-17).  Plaintiff did not hand anything to Mr. Miller and Miller did not hand anything to plaintiff.  (*See* Plaintiff Lashawn Burgess's Deposition, dated June 16, 2016 ("Pl. Dep. I"), annexed to the Leventhal Decl., Ex. B at 76:10-14; *see also* Lashawn Burgess Declaration, dated May 25, 2016 ("Burgess Decl."), annexed to the Leventhal Decl., Ex. K; *see also* Deposition of Leroy Miller, dated September 8, 2016 ("Miller Dep."), annexed to the Leventhal Decl., Ex. C at 77:6-8; 90:8-10).  The defendants did not see plaintiff shaking hands with Mr. Miller, as the two shook hands upon meeting and did not shake hands when they parted approximately five minutes later when the defendants arrived at their location.  (*See* Pl. Dep. II, Ex. A at 58:7-17).  Mr. Miller testified that plaintiff did not sell him cocaine and plaintiff did not give him anything. (*See* Miller Dep., Ex. C at 77:6-8, 90:8-10).

Defendants Agostino, DiCecco, and Alexander, first observed plaintiff and Miller while traveling in a moving vehicle when they were approximately 20 to 50 feet away from plaintiff and Miller.  (*See* Defendant Agostino's Deposition, dated June 22, 2016 ("Agostino Dep. I"), annexed to the Leventhal Decl., Ex. D at 25:12-17; 27:17-19; *see also* Defendant DiCecco's Deposition, dated June 21, 2016 (DiCecco's Dep."), annexed to the Leventhal Decl., Ex. E at 19:22-20:4; 61:12-17; *see also* Defendant Alexander's Deposition, dated June 24, 2016

("Alexander Dep."), annexed to the Leventhal Decl., Ex. G at 27:22-28:4). The vehicle continued moving until it stopped and the officers exited approximately 5 to 15 feet away from plaintiff and Miller. (*See* Agostino Dep. I, Ex. D at 33:20-34:8; *see also* DiCecco Dep, Ex. E at 25:21-24; *see also* Alexander Dep., Ex. G at 25:3-9). Defendants Agostino and DiCecco testified that they observed plaintiff and Mr. Miller for "a few seconds" before they observed plaintiff exchange an object for United States Currency with Mr. Miller (*see* Agostino Dep. I, Ex. D at 28:19-29:2, *see also* Defendant DiCecco's Deposition, dated June 21, 2016 ("DiCecco Dep.") annexed to the Leventhal Decl. Ex. E at 21:4-7). The defendants exited their vehicle when it stopped, and detained plaintiff and Miller. (*See* Pl. Dep II., Ex. A at 59:3-62:22; 63:22-65:15; *see also* Plaintiff Lashawn Burgess's Deposition, dated June 16, 2016, ("Pl. Dep. I") annexed to the Leventhal Decl., Ex. B at 68:12-24; 72:13-23). The defendants searched plaintiff and Miller and recovered two bags of cocaine from Miller. *Id.* The defendants did not recover drugs or other contraband from plaintiff. (*See* Pl. Dep. I, Ex. B at 71:1-6). The defendants recovered $80.00 from plaintiff, removed one twenty-dollar bill, and returned the rest of the currency to plaintiff. (*See* Pl. Dep. I, Ex. B at 80:1-3; 88:17 – 89:5). Defendant DiCecco told plaintiff that the defendants were arresting him because they saw him give something to Mr. Miller. (*See* Pl. Dep. I, Ex. B at 71:21-25; 72:2-8; 73:10-12; 79:8-10). Plaintiff responded that he knew that the defendants did not see him give anything to Mr. Miller. (*See* Pl. Dep. I, Ex. B at 79:13-18). Mr. Miller told the defendants that plaintiff did not sell him the cocaine that he possessed. (*See* Leroy Miller's Deposition, dated September 8, 2016 ("Miller Dep.") annexed to the Leventhal Decl., Ex. C at 44:1-20; 106:16-25).

Thereafter, the defendants handcuffed plaintiff and transported him to the 121st police precinct. (*See* Pl. Dep. I, Ex. B at 87:11- 88:9). Defendant DiCecco assigned defendant

Agostino to be the arresting officer for both plaintiff and Mr. Miller. (*See* Defendant Agostino's Deposition, dated June 22, 2016 ("Agostino Dep. I") annexed to the Leventhal Decl., Ex. D at 48:22-25; *see also* DiCecco Dep., Ex. E at 29:1-18). Defendant DiCecco discussed with defendant Agostino what charges defendant Agostino would file against plaintiff. (*Id.* at 30:17-31:3).

Defendant Agostino prepared an Arrest Report charging plaintiff with Criminal Possession of a Controlled Substance in the Fifth Degree and Criminal Possession of a Controlled Substance in the Seventh Degree. (*See* relevant documents contained in the Richmond County District Attorney's Office File ("DA File"), annexed to the Leventhal Decl. as Ex. F, pp. P018-P020; *see also* Agostino Dep. I, Ex. D at 52:20-53:11; *see also* Defendant Alexander's Deposition, dated June 24, 2016 ("Alexander Dep.") annexed to the Leventhal Decl. as Ex. G, p 38:18-41:22). Defendant Agostino stated in the "Details" section of the Arrest Report that he observed plaintiff exchange alleged cocaine with Mr. Miller for two ten-dollar bills. (*See* DA File, Ex. F at pp. P018-P022). Defendant Agostino was plaintiff's arresting officer; defendant DiCecco was the supervisor approving plaintiff's arrest and the Arrest Report; and defendant Alexander "entered" the Arrest Report. *Id.*

Defendant Alexander prepared and entered the Complaint Report for plaintiff's arrest. (*See* Defendant Alexander's Deposition, dated June 24, 2016 ("Alexander Dep.") annexed to the Leventhal Decl. as Ex. G, p. 38:18-41:22; *see also* DA File, Ex. F pp. P021-P022). Defendant Alexander stated in the "Details" section of the Complaint report that the arresting officer, defendant Agostino, observed plaintiff hand Mr. Miller two small glassines of alleged cocaine in exchange for two ten-dollar bills. (*See* DA File, Ex. F pp. P021-P022). Defendant DiCecco was the supervisor approving the Complaint Report. *Id.*

All of the foregoing charges, narratives, and details in the Arrest Report and Complaint Report were intentionally fabricated by the defendants as the defendants all observed plaintiff at the same time from the same vantage point and knew that plaintiff did not hand anything to Mr. Miller and that Mr. Miller did not hand anything to plaintiff. (*See* Lashawn Burgess Declaration, dated May 25, 2016 ("Burgess Decl.") annexed to the Leventhal Decl., Ex. K; *see also* Miller Dep., Ex. C at 77:6-8; 90:8-10). Notwithstanding, defendants Agostino and Dicecco testified that they observed plaintiff hand something to Mr. Miller and Miller hand United States currency to plaintiff; and defendant Alexander testified that he observed plaintiff hand something to Mr. Miller. (*See* Agostino Dep. I, Ex. D at 30:25-31:23; 35:18-36:12; *see also* DiCecco Dep., Ex. E at 22:3-23:10; *see also* Agostino Dep. I, Ex. D at 26:11-24).

Thereafter, defendant Agostino verbally conveyed the fabricated evidence to an Assistant District Attorney ("ADA") in the Richmond County District Attorney's office that plaintiff handed cocaine to Mr. Miller in exchange for United States currency. (*See* Agostino Dep. I, Ex. D at 60:18-24). The fabricated Arrest Report and Complaint Report were also forwarded to the Richmond County District Attorney as those documents were maintained in the DA File for plaintiff's prosecution. (*See* DA File, Ex. F, pp. P012-P022). Based on the conveyance of the fabricated evidence to the ADA, defendant Agostino signed a Criminal Court Complaint drafted by the ADA that falsely charged plaintiff with Criminal Possession of a Controlled Substance in the Fifth Degree and Criminal Possession of a Controlled Substance in the Seventh Degree. (*See* Agostino Dep. I, Ex. D at 60:25-61:16; *see also* Richmond County Criminal Court Complaint, annexed to the Leventhal Decl., Ex. L). Plaintiff remained in custody for more than fifteen hours until he was released on his own recognizance following his arraignment in Richmond County Criminal Court. (*See* Pl. Dep. I, Ex. B at 101:7-9; *see also* New York City Police Department

Arrest Tracking Sheet, Bates Stamped DEF 074, annexed to the Leventhal Decl., Ex. N). Thereafter, plaintiff was maliciously prosecuted and compelled to return to court on three separate occasions. (*See* Richmond County Criminal Court Record of Court Action, annexed to the Leventhal Decl., Ex. H; *see also* Burgess Dep. I, Ex. B at 101:15-21). On September 16, 2014, the Richmond County District Attorney moved to dismiss all charges filed against plaintiff and the Richmond County Criminal Court dismissed and sealed all charges filed against plaintiff. (*See* Certificate of Disposition, annexed to the Leventhal Decl., Ex. I).

Mr. Miller testified in an examination before trial herein that plaintiff did not hand him anything prior to the arrest and that Miller purchased the cocaine he possessed from another individual at another location. (*See* Miller Dep., Ex. C at 44:1-20; 71:2-72:17; 90:8-10).

## ARGUMENT

## <u>SUMMARY JUDGMENT STANDARD</u>

"On summary judgment the inferences to be drawn from the underlying facts … must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Lit. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Howard v. Schoberle*, 907 F.Supp. 671, 677 (S.D.N.Y. 1995) (*citing Chambers v. TRM Copy Centers Corp*., 43 F.3d 29, 37 (2d Cir. 1994)*.* In deciding a summary judgment motion, "[t]he district court is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). "[A]ll doubts as to

the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988).

**POINT I:**
**MATERIAL ISSUES OF FACTS PRECLUDE SUMMARY JUDGMENT FOR DEFENDANTS ON PLAINTIFF'S FALSE ARREST CLAIM**

This Court should deny defendants' motion for summary judgment on plaintiff's false arrest claim because plaintiff's version of the facts supports a finding that the defendants arrested plaintiff without probable cause. Defendants rely on their version of the disputed facts and ask this Court to find that probable cause existed for plaintiff's arrest based on disputed facts.

It is well-settled that "[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence *vel non* of probable cause is to be decided by the jury." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997); *see also Weyant,* 101 F.3d at 855 ("The weighing of the evidence and the determination as to which version of the events to accept are matters for the jury."); *Wu v. City of New York*, 934 F.Supp. 581, 588 (S.D.N.Y. 1996) ("Where the defense of probable cause is based on conflicting evidence, the question is resolved by the jury."). Based on the foregoing principals of law, defendants' motion for summary judgment on plaintiff's false arrest claim should be denied.

According to plaintiff, on February 28, 2014 at approximately 9:00 p.m., plaintiff saw an acquaintance, Leroy Miller, in the vicinity of Park Avenue and Church Street. The two men shook hands, had an approximate five-minute conversation, and then walked away from each other without shaking hands again. Plaintiff did not hand anything to Mr. Miller and Mr. Miller did not hand anything to plaintiff. The defendants did not have an opportunity to see plaintiff shake hands with Mr. Miller as the two shook hands upon meeting, and did not shake hands

when they parted approximately five minutes later when the defendants arrived at their location and observed them. As the defendants have testified that they made all observations of plaintiff and Mr. Miller while in a moving vehicle beginning when they were approximately 20 to 50 feet away from plaintiff and Miller, and that the vehicle continued moving until it stopped and the officers exited 5 to 15 feet away from plaintiff and Miller, the defendants only observed plaintiff and Miller for a number of seconds, not minutes. Thus, the evidence supports a finding that the defendants did not see plaintiff and Mr. Miller shake hands.

The defendants did not have probable cause to believe that plaintiff committed any crime or offense because they only observed plaintiff and Mr. Miller in close proximity to each other, walking away from each other. Although Mr. Miller was in possession of a controlled substance, it is well established that a person's close proximity to others who are involved in criminal activity is insufficient to establish probable cause to arrest. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause.")

Moreover, although plaintiff disputes that the defendants had an opportunity to see him shaking hands with Mr. Miller, assuming *arguendo* that they did witness this act, as District Judge John G. Koeltl held in *Perez v. Duran,* shaking hands with an individual later found to be in possession of drugs in a drug-prone location does not establish probable cause for the sale of narcotics at the summary judgment stage. *See Perez v. Duran*, 962 F.Supp.2d 533. 539 (S.D.N.Y. 2013) ("The defendant argues that he had probable cause to arrest the plaintiff based on the following: (i) his alleged observation of the exchange of money and a small object between the plaintiff and [another individual]; (ii) [the other individual's] possession of crack cocaine; and (iii) the plaintiff's possession of $444 in cash. However, in his deposition, the

plaintiff denied … he exchanged anything with [the other individual] during their interaction.  At this stage of the proceedings, the Court must resolve all factual discrepancies in the plaintiff's favor.  Accordingly, based on the plaintiff's version of events, the only evidence that [defendant] could have had was that the plaintiff had shaken [the other individual's] hand and that [the other individual] was later found to possess crack cocaine.").

However, defendants do not argue that they had probable cause to arrest plaintiff based on plaintiff's version of the events; instead they portray their version of the disputed facts as undisputed (*see* defendants Rule 56 statement ¶¶ 12-22 and plaintiff's counter statement) and argue that these disputed facts established probable cause for plaintiff's arrest.  Indeed, defendants argue that "they observed … plaintiff use his right hand to give an object to Mr. Miller, who was wearing gloves, and Mr. Miller, in return, give plaintiff an unknown amount of United States currency."  Defendants' Memorandum of Law ("Defs. Mem."), p. 7.  Defendants attempt to depict this "fact" as undisputed by arguing that plaintiff and Mr. Miller "admitted to touching hands" before they were arrested.  *Id*.  Defendants' use of the term "touching hands" implies that plaintiff and Mr. Miller were involved in a surreptitious hand-to-hand transaction but both Mr. Miller and plaintiff testified that they simply shook hands – as friends and acquaintances typically do.  *See* Pl. Dep. II, Ex. A at 57:1-4; *see also* Miller Dep., Ex. C, at 78:11-14.  Notwithstanding, as discussed above, plaintiff reasonably disputes that the defendants saw him shake hands with Mr. Miller.  Moreover, plaintiff denies that he handed anything to Mr. Miller and that Mr. Miller handed anything to plaintiff.  Miller testified that plaintiff did not hand him anything.

The facts in the cases relied on by the defendants in support of their argument are clearly distinguishable from the facts herein.  In *Smith v. City of New York*, 2010 U.S. Dist. LEXIS

88774 (S.D.N.Y. 2010), the plaintiff *admitted* that he exchanged an item and only disputed that the transaction involved drugs. *Id.* at *3 ("[[D]efendant] stated that he did not see exactly what plaintiff gave the suspect buyer … [and plaintiff] …stat[ed] that instead it was he who handed two dollars to Blenhyne.").

Similarly, in *Sam v. Brown*, 2002 U.S. Dist. LEXIS 17714 (E.D.N.Y. 2002), *Pena v. State of New York*, 4-CV-9499 (DAB) (HBP), ECF Doc. 22 (Report and Recommendation) (S.D.N.Y. 2008), and *United States v. Roland*, 2012 U.S. Dist. LEXIS 2899 (S.D.N.Y. 2012) the defendants who sought relief from the courts in connection with their criminal cases did not deny that they were involved and observed in hand-to-hand transactions.

In *Sam v. Brown* and *Pena v. State of New York*, petitioners sought a writ of habeas corpus. As such, and unlike here where every reasonable inference is to be drawn in plaintiff's favor, both of those cases involved concluded criminal trials wherein the finders of fact convicted the petitioners of crimes after they reviewed the evidence and evaluated the credibility of the testifying witnesses. In *Sam v. Brown*, 2002 U.S. Dist. LEXIS 17714, the petitioner did not dispute that he was observed handing small bags to a woman in exchange for money; instead he argued that probable cause was lacking for his arrest because he did not possess drugs when he was arrested as the drugs were not recovered from his person. *Id.* at * 1, 11-12.

Similarly, in *Pena v. State of New York*, 4-CV-9499 (DAB) (HBP), ECF Doc. 22, the petitioner did not dispute that he was observed handing an individual an object after that individual handed plaintiff's accomplice a sum of money, nor did he dispute that he possessed several bags of cocaine at the time of his arrest; rather, he argued that the "officers' testimony concerning their observations of petitioner's participation in a drug transaction was overly

'ambiguous'" and was not sufficient to prove that he possessed the drugs with the "intent to sell." *Id.* at pp. 3, 17.

Finally, in *United States v. Roland*, 2012 U.S. Dist. LEXIS 2899, the defendant sought suppression of evidence recovered after officers observed him exchanging small items for money with another individual. Although narcotics were not recovered from the defendant, they were recovered from the other individual shortly after the observed transaction. *Id.* at *1-14. Again, the defendant did not dispute that he was observed in a transaction that involved the exchange of money for a small item. Instead, he based his suppression motion "entirely on the inconsistencies found in the testimony and reports involved in Defendant's arrest." *Id.* at *14. The officers all testified at an evidentiary hearing and the Court there, unlike here, weighed the evidence and evaluated the credibility of the testifying officers when it found that probable cause existed.

Unlike the foregoing cases, the undisputed facts herein do not establish that plaintiff was involved in an exchange with Mr. Miller. Indeed, defendants do not and cannot point to any cases wherein a court found, at the summary judgment stage, that probable cause for an arrest existed based on undisputed facts similar to those herein.

Defendants further argue that "even if the observations made by defendants that plaintiff had engaged in a hand-to-hand transaction with Mr. Miller was (sic) faulty defendants are still entitled to the defense of qualified immunity." Defs. Mem., p. 9. Qualified immunity is available to police officers under § 1983 if either "(1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable [for them] to believe that their acts did not violate these clearly established rights." *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010).

Again, defendants put forth their version of the disputed facts and argue that they had "probable cause for plaintiff's arrest and detention" (Defs. Mem., p. 10) and their actions in arresting plaintiff were therefore "reasonable under the circumstances …. [b]ased on [their] observation of plaintiff engaging in a hand-to-hand drug transaction for United States currency with Mr. Miller." Defs. Mem., p. 11. As discussed *supra*, viewing the evidence in the light most favorable to plaintiff, the defendants did not observe plaintiff engage in any hand-to-hand transaction with Mr. Miller and thus the defendants cannot rely on their version of the disputed facts to establish that their actions were reasonable under the circumstances.

Based on the foregoing, this Court should deny defendants' motion for summary judgment on plaintiff's false arrest claim.

## POINT II:
## PLAINTIFF HAS ESTABLISHED A VALID CLAIM
## FOR DEPRIVATION OF THE RIGHT TO A FAIR TRIAL
## AGAINST ALL THE NAMED DEFENDANTS

Defendants initially argue for dismissal of plaintiff's right to a fair trial claim on the grounds that the claim "fails as a matter of law" because "[c]laims brought under the 'Due Process Clause of the Fifth and Fourteenth Amendments' are generally dismissed as a matter of law when they are founded on the same conduct that give rise to plaintiff's false arrest and malicious prosecution claims." Defs. Mem., p. 12. The Second Circuit has recently addressed this very issue and held:

> Claims alleging the denial of a right to a fair trial based on fabricated evidence are redressable under the Constitution, regardless of which constitutional provision provides the basis for the claim – '[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.' (internal citations omitted) …. Indeed, our sister circuits have recognized that a plaintiff may pursue an independent due process claim premised on fabricated evidence. As the Fifth Circuit has observed, we, along with the Eighth, Ninth, and Tenth Circuits, have 'all found denials of due process when charges rest on fabricated evidence,' and the Fifth Circuit agrees that there is 'a due process right

not to have police deliberately fabricate evidence and use it to frame and bring
false charges against' an arrestee. (citations omitted)

*Garnett v. Undercover Officer C0039*, 838 F.3d 265, 278 (2d Cir. Sept. 30, 2016). As all but one

of the cases cited by defendants are district court cases that predate the Second Circuit's *Garnett*

decision. *See Waddington v. City of New York*, 971 F.Supp.2d 286 (E.D.N.Y. Apr. 23, 2013);

*Hewitt v. City of New York*, 2012 U.S. Dist. LEXIS 141067 (E.D.N.Y Sept. 28, 2012); *Rolon v.*

*Henneman*, 443 F.Supp.2d 532 (S.D.N.Y. Aug. 2, 2006).

The other case cited by defendants, *Maliha v. Faluotico*, 286 Fed. Appx. 742 (2d Cir.

2008), is a Second Circuit case that resulted in the issuance of a summary order which has no

precedential effect.[1] Notably, *Maliha* also predates the *Garnett* decision and is clearly

distinguishable. In addition to false arrest, the plaintiff in *Maliha* alleged that the defendant's

"falsification of official documents deprived him of substantive due process." *Id.* at 743. The

Second Circuit held that plaintiff's "generalized" substantive due process claim merged with his

Fourth Amendment claim because the former claim "arises from the same set of actions" as his

Fourth Amendment claim. *Id.* Importantly, the plaintiff in *Maliha* did not put forth allegations

that would support a denial of the right to a fair trial claim based on the fabrication of evidence;

the plaintiff did not allege that the defendant police officer forwarded to a prosecutor fabricated

evidence of a kind that would influence a jury, and suffered a deprivation of liberty as a result.

*Maliha v. Faluotico*, 04-CV-1127 (LEK) (DRH), 2007 U.S. Dist. EXIS 13602 (N.D.N.Y. Feb.

28, 2007), ECF Doc. 1, ¶¶ 4-42; *(see also Garnett,* 838 F.3d at 277) (stating that "the elements

of a denial of the right to a fair trial claim [are] 'an (1) investigating official (2) fabricates

evidence (3) that is likely to influence a jury's decision, (4) forwards that information to

---

[1] *See* 2d Cir. Local R. 32.1.1 (a) ("Rulings by summary order do not have precedential effect.")

prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.'" (quoting *Jovanovic v. City of New* York, 486 F.Appx. 149, 152 (2d Cir. 2012)).   As such, the *Maliha* plaintiff's generalized substantive due process claim was based on the same conduct as his false arrest claim.

Here, plaintiff's deprivation of the right to a fair trial claim and malicious prosecution claims are not based on the same conduct as his false arrest claim.   As discussed herein, plaintiff's false arrest claim is based on his arrest without probable cause.   Plaintiff's deprivation of right to fair trial claim is based on the defendants' fabrication of evidence that would likely influence a jury, and the forwarding that evidence to a prosecutor which resulted in plaintiff suffering a deprivation of liberty; and his malicious prosecution claim is premised on the defendants' initiation of plaintiff's criminal prosecution which terminated in his favor and which lacked probable cause.   As such, plaintiff's claims do not arise out of the same set of actions. Notwithstanding, the Second Circuit has specifically held that a fabrication of evidence claim is an independent claim that can proceed along with a false arrest and malicious prosecution claim. *See Garnett*, 838 F.3d at 278.

Defendants further argue that "to the extent that there are discrepancies on the arrest documents, plaintiff fails to establish that they are more than errors, and '[n]egligence is not a basis for liability for constitutional torts."   Defs. Mem., p. 14 (citation omitted).   To be clear, plaintiff's fabrication of evidence claim is not premised on discrepancies and errors; plaintiff's fabrication of evidence claim is premised on his version of the facts, which must be accepted as true at this stage, that each defendant only observed plaintiff and Mr. Miller in close proximity to each other and each defendant fabricated their observations of plaintiff in a hand-to-hand transaction with Mr. Miller wherein United States currency was exchanged for a small object,

and then each defendant forwarded that fabricated evidence to the prosecutor, by conveying it to the prosecutor in discussions and documents.

Defendants further argue that "even if the statements made by defendants in plaintiff's arrest paperwork and to the prosecutor are untrue" they cannot form the basis of plaintiff's denial of the right to a fair trial claim "because the alleged falsifications are testimonial" and police officers "are immune from liability for giving false testimony in connection with criminal matters." Defs. Mem., p. 14. Importantly, while it is true that under *Rehberg v. Paulk,* 566 U.S. 356, 369 (2012), and *Briscoe v. LaHue,* 460 U.S. 325, 335-336 (1983), police officers enjoy absolute immunity for any claim brought under 42 U.S.C. § 1983 based on their grand jury and/or trial testimony, the Second Circuit has held that:

> [w]hen a police officer claims absolute immunity for his grand jury testimony under *Rehberg,* the court should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony. If the claim exists independently of the grand jury testimony, it is not 'based on' that testimony, as that term is used in *Rehberg. (*citation omitted) Conversely, if the claim requires the grand jury testimony, the defendant enjoys absolute immunity under *Rehberg.*

*Coggins v. Buonora,* 776 F.3d 108, 113 (2d Cir. 2015).

In *Coggins,* the plaintiff alleged that the defendant police officer withheld and falsified evidence and committed perjury by providing false testimony to the grand jury. *Id.* at 112. The defendant moved to dismiss and the district court denied that motion in part and the defendant appealed. *Id.* On appeal, the defendant argued that "at [their] core, [plaintiff's] claims all 'involve [the defendant's] grand jury appearance'" and should thus be dismissed based on the absolute immunity the defendant receives for his grand jury testimony. *Id.* The Second Circuit explicitly rejected this argument, and held that:

> [such an interpretation would] set a dangerous precedent: Any police officer could immunize for § 1983 purposes any unlawful conduct prior to and independent of

his perjurious grand jury appearance merely by testifying before a grand jury. Such an outcome would also be inconsistent with the limitations *Rehberg* explicitly imposes on the scope of absolute immunity, which the Supreme Court instructed was not to 'extend[ ] to *all* activity that a witness conducts outside of the grand jury room.' (citation omitted).

*Id.* at 112-113.

The Second Circuit went on to hold that the defendant's "police reports" and "statements to the district attorney" were "independently actionable under § 1983," (*Id.* at 113) and further held that "*any* information fabricated by an officer can serve as the basis of a claim for a denial of the right to a fair trial." *Garnett,* 838 F.3d at 279. Importantly, the Second Circuit has specifically held that an "officer's [false] account of his or her own observations of an alleged criminal activity giving rise to an arrest" can be the basis for a deprivation of a right to a fair trial claim. *Id.* As such, the defendants' false statements regarding plaintiff exchanging cocaine for United States currency contained in the documents that the defendants forwarded to the prosecutor's office, as well as in the statements made by defendant Agostino to the ADA, can form the basis of a denial of the right to a fair trial claim.

Notwithstanding the Second Circuit's holding in *Garnett* that any evidence fabricated by an officer can serve as a basis for a deprivation of the right to a fair trial claim, defendants further argue that plaintiff's right to a fair trial claim fails because the alleged fabrication could not have reached a jury through trial testimony, as statements contained in police paperwork or a criminal court complaint, or that are relayed orally to the prosecutor, could not influence a jury because they are be (sic) inadmissible hearsay." Defs. Mem., p. 15.

In addition to the Second Circuit, courts in this district as well as the Southern District of New York have specifically analyzed whether fabricated evidence, in the form of false statements or other evidence that would not be admissible at trial, is evidence that is "likely to

influence a jury's decision" since that fabricated evidence would probably not reach a jury.

*Rucks v. City of New York,* 96 F.Supp.3d 138, 149 (S.D.N.Y. 2015). Courts have concluded that

the phrase "likely to influence a jury's decision" refers to the "materiality of the information,"

and not to its "like[lihood] to be presented to a jury" in an admissible form. *See Garnett v.*

*Undercover Officer C0039,* 2015 U.S. Dist. LEXIS 45232, at *23-24 (S.D.N.Y. 2014).

> Moreover, District Judge Katherine Polk Failla noted in the *Rucks* decision:
>
> . . . accepting that a false statement itself must be admissible would ensure that denial of a fair trial clam based upon a fabricated narrative could never successfully navigate the Scylla and Charybdis of admissibility and immunity, thus restricting the cause of action to fabricated physical evidence or confessions. Both the Supreme Court and the Second Circuit, however, have declined to endorse this result, maintaining the availability of a cause of action under Section 1983 against 'law enforcement officials who falsify affidavits,' *Rehberg,* (citation omitted) and for false 'police report[s], . . . statements to the district attorney, and police radio transmissions,' *Coggins,* (citation omitted).

*Rucks,* 96 F.Supp.3d at 149-150; *see also Nnodimele v. Derienzo,* 2016 U.S. Dist. LEXIS 83357,

at *19 (E.D.N.Y 2016) (Holding in part that fabricated evidence need not be admissible at trial in

order to sustain a right to fair trial claim; the fabrication only needs to be "material, that is, that it

would be likely to influence a jury's decision if a jury were to consider it."); *Gomez v. City of*

*New York*, 2016 U.S. Dist. LEXIS 110841, at * 5-6 (E.D.N.Y 2016) (The Court rejected the

defendants' argument that inadmissible hearsay was not likely to influence a jury and held that

'hearsay in a criminal complaint can influence a prosecutor's charging decision and result in a

pre-trial deprivation of liberty."); *Soomro v. City of New York*, 174 F.Supp.3d 806, 815-816

(S.D.N.Y. 2016) (Denying defendants' summary judgment motion with regard to plaintiff's

deprivation of a right to a fair trial claim because the defendants' argument that alleged

fabricated statements within a criminal complaint and police documents could not have

'influenced' a jury because they would not have reached a jury as they are inadmissible hearsay

"conflates the materiality (likely to influence a jury) and causation (consequential deprivation of liberty) elements of a denial of fair trial claim.").

Thus, when analyzing whether the fabricated evidence at issue would likely influence a jury in connection with a deprivation of the right to a fair trial claim, the critical inquiry is whether the alleged fabrication is material, that is, would the fabrication influence a jury if a jury considered it. Here, there is no question that the fabrications are material, notwithstanding that the actual fabricated police reports and communications to the ADA might be deemed inadmissible hearsay for grand jury or criminal trial purposes. Indeed, the fabricated observations of the plaintiff engaged in criminal activity with Mr. Miller would obviously be the type of fabrication that would influence a jury, should a jury consider it, and thus properly form the basis for plaintiff's deprivation of the right to a fair trial claim.

Lastly, defendants appear to argue that since plaintiff's matter did not proceed to trial, his deprivation of a right to a fair trial claim should be dismissed. However, in *Ricciuti v. New York City Transit Auth.,* 124 F.3d 123 (2d Cir. 1997), the Second Circuit recognized a right to fair trial claim when the criminal case did not proceed to trial. *Id.* at 127. Indeed, courts in this circuit have allowed a right to fair claim to proceed where no trial occurred. *See Rhooms v. City of New York,* 2017 U.S. Dist. LEXIS 49538, at * 13, 28-29 (E.D.N.Y. March 31, 2017) (denying Defendants' summary judgment motion with regard to the denial of a fair trial claim where Plaintiff's underlying criminal case was dismissed prior to trial); *Nnodimele v. Derienzo,* 2016 U.S. Dist. LEXIS 83357, at *19 ("The evidence fabrication claim does not require that a criminal trial took place."). As such, plaintiff's deprivation of the right to a fair trial claim should not be dismissed because the underlying criminal case need not proceed to trial for plaintiff to sustain his claim.

Based on the foregoing, this Court should deny defendants' motion for summary judgment on plaintiffs right to a fair trial claim.

## POINT III:
## PLAINTIFF HAS ESTABLISHED A VALID MALICIOUS PROSECUTION CLAIM AGAINST ALL THE NAMED DEFENDANTS

Defendants argue that plaintiff has failed to satisfy three elements of his malicious prosecution claim. Defs. Mem., p. 16. Although defendants concede that defendant Agostino relayed his purported observations to an Assistant District Attorney (*Id.* at 17), defendants argue that the proceeding was initiated by the Richmond County District Attorney's Office and not the defendant officers. *Id.* at 16.

Generally, "[o]nce a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." *Douglas v. City of New York*, 595 F.Supp.2d 333, 342 (S.D.N.Y. 2009), *quoting Williams v. City of New York*, 2003 U.S. Dist. LEXIS 19078, *6 (S.D.N.Y. 2003). However, courts have found an exception when, as here, a "police officer is accused of providing false information to a prosecutor that 'influences a decision whether to prosecute, he may be held liable for malicious prosecution.'" *Id., quoting Chimurenga v. City of New York*, 45 F.Supp.2d 337, 343 (S.D.N.Y. 1999). *See also Breeden v. City of New York*, 2014 U.S. Dist. LEXIS 4165, at *31 (E.D.N.Y. 2014) ("[P]laintiffs have overcome the presumption that a prosecutor exercises independent judgment in deciding whether to initiate a criminal proceeding where they have shown that the officer either (1) created false information and forwarded it to prosecutors or (2) withheld relevant and material information."). Indeed, showing that a police officer "failed to make a complete and full statement of facts to the District Attorney, misrepresented or falsified

evidence, withheld evidence or otherwise acted in bad faith" satisfies the initiation element of malicious prosecution. *Manganiello v. City of New York,* 612 F.3d 149, 160 (2d Cir. 2010).

Importantly, the Second Circuit has held that "Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments." *Cameron v. City of New York*, 598 F.3d 50, 63 (2d.Cir. 2010). Indeed, as District Judge Joanna Seybert stated in *Tretola v. D'Amico*, 2014 U.S. Dist. LEXIS 89601 (E.D.N.Y. 2014), "[i]n malicious prosecution cases against police officers, plaintiffs have met this first element by showing that officers brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint." *Id.* at *21-22.

As discussed *supra*, plaintiff did not sell or give anything to Mr. Miller and Mr. Miller did not give anything to plaintiff; thus, plaintiff alleges that the defendants provided false information to the prosecutor. The false information conveyed by defendants clearly influenced the prosecutor's decision to file criminal charges and the defendants can therefore be found liable for malicious prosecution. Defendant Agostino provided the fabricated narrative to the prosecutor regarding the purported transaction between plaintiff and Mr. Miller. Thereafter, defendant Agostino falsely swore to the fabricated narrative in the Criminal Court Complaint filed against plaintiff. *See* DA File, Ex. F, pp. P014-15. Defendant Alexander entered the Arrest Report and created the Complaint Report that stated that defendant Agostino observed plaintiff hand two small glassines of cocaine to Mr. Miller in exchange for United States currency and defendant DiCecco approved of the Arrest Report and the Complaint report which were forwarded to the prosecutor. *See* DA File, Ex. F**,** pp. P021-22. As all the defendants observed plaintiff at the same time from the same vantage point and arrested plaintiff together, when the evidence is viewed in the light most favorable to the plaintiff, the foregoing establishes that the

named defendants all forwarded false information to the prosecutor which influenced their decision to prosecute plaintiff and thus, the evidence supports a finding against all defendants for malicious prosecution. Moreover, it is reasonable to infer based on the police reports and based on defendants Alexander and DiCecco's involvement in plaintiff's arrest that Alexander and DiCecco conspired with defendant Agostino to initiate the prosecution against plaintiff.

Defendants next argue that the existence of probable cause defeats plaintiff's malicious prosecution claim. Defs. Mem., p. 18. As discussed *supra,* a clear factual dispute exists between plaintiff and the defendants as to what occurred between plaintiff and Mr. Miller. Under plaintiff's version, the defendants did not have probable cause to believe plaintiff had committed any crime or offense. Thus, there are triable issues of fact as to whether probable cause existed for plaintiff's arrest which precludes summary judgment for the defendants. *See Chimurenga v. City of New York*, 45 F.Supp.2d 337, 343 (S.D.N.Y. 1999) (The Court denied in part a summary judgment motion filed by the defendants in connection with a malicious prosecution claim because "there [was] a triable dispute as to whether genuine probable existed or whether the individual defendants manufactured it falsely.")

Lastly, defendants argue that the prosecution was not commenced with malice. Notably, defendants concede that malice may be inferred for a prosecution that was commenced without probable cause. Defs. Mem., p. 18 (citing *Smith v. City of New York*, 2010 U.S. Dist. LEXIS 88774, at *24-25 (S.D.N.Y. 2010). As discussed *supra*, under plaintiff's version of the facts, the defendants arrested plaintiff without probable cause. Thus, under plaintiff's version, the defendants' malice may be inferred for the prosecution commenced without probable cause.

Based on the foregoing, this Court should deny defendants' summary judgment motion on plaintiff's malicious prosecution claim.

**POINT IV:**
**PLAINTIFF HAS COMPLIED WITH NEW YORK'S GENERAL MUNICIPAL LAW**
**AND HIS STATE LAW CLAIMS SHOULD NOT BE DISMISSED**

Defendants argue that plaintiff's state law malicious prosecution claim and state law claim premised on *respondeat superior* should be dismissed because plaintiff failed to timely file a Notice of Claim pursuant to New York General Municipal Law §§ 50-e and 50-i, which require that a plaintiff asserting a state law tort against a municipal entity or its employees acting within the scope of their employment: (1) file a Notice of Claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date on which the cause of action accrues. Defs. Mem., p. 19. Notably, termination of the criminal action in plaintiff's favor is an essential element of a malicious prosecution claim under both federal and New York law. *Bailey v. City of New York*, 79 F.Supp.3d 424, 447-448 (E.D.N.Y. 2015). Further, "[a] State law claim for malicious prosecution, like a federal claim, accrues on the date the criminal proceeding in question terminated in plaintiff's favor." *Id.* at 451.

The Richmond County District Attorney's Office moved to dismiss all criminal charges filed against plaintiff on September 16, 2014, and the Richmond County Criminal Court dismissed all charges on that date. *See* Certificate of Disposition, Ex. I. As such, plaintiff's malicious prosecution accrued on September 16, 2014 and his Notice of Claim was timely filed on October 7, 2014. Plaintiff thereafter commenced this action on September 23, 2015, within a year and ninety days of September 16, 2014.

The defendants further argue that plaintiff's Notice of Claim was defective because it failed to identify any individual defendants. Defs. Mem., p. 21. However, the New York State Appellate Division, Second Department, recently held that "listing the names of the individuals who allegedly committed the wrongdoing is not required" as a condition precedent to joining

those individual employees in an action.  *Blake v. City of New York*, 148 A.d.3d 1101, 1106 (2d. Dept., March 29, 2017).  The Appellate Court further noted that the "requirements for a notice of claim … does not include a requirement that specific individual employees be named .…" *Id.* at *9.  Thus, plaintiff's Notice of Claim complies with the dictates of New York law as per the appropriate appellate court and his state law claims should not be dismissed.

## CONCLUSION

For the reasons set forth above, this Court should deny defendants' motion for summary judgment in its entirety.

Dated: Brooklyn, New York
       May 26, 2017

LEVENTHAL LAW GROUP, P.C.
45 Main Street, Suite 528
Brooklyn, New York 11201
(718) 556-9600

By:   /s_____
     EDWARD J. FERRITY
     JASON LEVENTHAL
     *Attorneys for Plaintiff*
