UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LASHAWN BURGESS,

        Plaintiff,

     - against -

THE CITY OF NEW YORK; VINCENT
AGOSTINO; MICHAEL DICECCO;
and RICKY ALEXANDER,

        Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
15-CV-5525 (RRM) (VMS)

ROSLYNN R. MAUSKOPF, United States District Judge.

    Plaintiff Lashawn Burgess commenced this action for false arrest, denial of the right to a fair trial, and malicious prosecution under 42 U.S.C. § 1983, as well as malicious prosecution and respondeat superior under New York State law against defendants the City of New York, and police officers Vincent Agostino, Michael DiCecco, and Ricky Alexander. (Am. Compl. (Doc. No. 13).)[1] Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Mot. for Summ. J. (Doc. No. 42).) Burgess opposes the motion. (Pl.'s Opp'n (Doc. No. 48).) Because a jury could credit Burgess's version of what occurred on the night that he was arrested, summary judgment does not lie.

## BACKGROUND

    The facts in this are rather straightforward. They are taken from the record and are largely undisputed, except in where noted. At approximately 9:00 p.m. on the night of February 28, 2014, officers Agostino, Alexander and DiCecco were on patrol in plainclothes and in an unmarked car in the Port Richmond neighborhood of Staten Island, an area known for drug activity. (Defs.' Ex.

---

[1] The Amended Complaint contains other claims, but Burgess has since stipulated that he will not be pursuing them.

1

B (Doc. No. 41-2) at 17:12–14, Defs.' Ex. C (Doc. No. 41-3) at 57:9–22, Pl.'s Ex. A. (Doc. No. 46-1) at 53:3–13.) According to the officers' version of events, as they approached the corner of Park Avenue and Church Street, they observed two men, Burgess and an acquaintance of his later identified as Leroy Miller. (Defs.' Ex. A (Doc. No. 41-1) at 25:12–22.) Miller was known to the officers as an individual who had previously been arrested for possession of a controlled substance, a fact that Burgess does not dispute. (Defs.' Ex. A at 37:6–38:18; Defs.' Ex. B at 29:8–30:2, 65:22–66:4; Defs.' Ex. C at 23:14–24:7.) They were the only two men on the street, and they were standing close to each other when the officers first saw them from a distance of 20 to 50 feet. (Defs.' Ex. A at 25:12–17, 30:25–31:5; Defs.' Ex. B at 23:11–16, 27:22–28:4.) The intersection of Park Avenue and Church Street is well lit. (Defs.' Ex. A at 26:4–7.)

All three officers claim that, from their vantage point in their slow-moving vehicle, straight ahead of them they saw Burgess hand something to Miller, and Agostino and DiCecco both claim that they saw Miller hand over U.S. currency in exchange. (Defs.' Ex. A at 10:10–18, 35:10–36:9; Defs.' Ex. B at 26:14–21; Defs.' Ex. C at 22:9–23:10.) The officers then pulled up beside the two men, as Burgess and Miller began to walk away from one another. (Defs.' Ex. A at 34:6–19.) They approached both men, and detained them. They searched Miller and discovered two bags of crack cocaine hidden in his glove. (Defs.' Ex. A at 41:21–24.) The officers then arrested both Miller and Burgess. (Defs.' Ex. A at 43:17–19, 47:13–15.) Burgess was then searched; no drugs were found, but the officers recovered $20 from him.[2] (Defs.' Ex. E (Doc. No. 41-5) at 62:1–63:5.)

Burgess's version is not dissimilar except in a few material respects. Burgess concedes that upon initially seeing Miller, the two greeted one another with a handshake. (Pl.'s Ex. A at

---

[2] The police claimed Burgess was carrying $20 in cash, but Burgess disputes this, saying he was carrying $80. (Defs.' Ex. A at 41:8–14; Pl.'s Ex B at 79:22–80:5.)

2

56:24–57:4.) He says that the men did not shake hands again after their initial greeting. (*Id.* at 58:7–15.) Burgess adamantly denies handing anything to Miller at any time that evening. (Pl.'s Ex. K (Doc. No. 46-11).) In addition, Burgess claims that the two men had been in conversation for five minutes before the police arrived on the scene, and as a result, he claims that the officers could not possibly have observed the handshake between the two men. (Pl.'s Ex. A at 57:11–12; Pl.'s Opp'n at 13–14.)

After the arrest, Agostino prepared an arrest report in which he claimed to have seen Burgess sell drugs to Miller. (Pl.'s Ex. F (Doc. No. 46-6) at 8–10.) Alexander entered this report, and DiCecco was the approving supervisor. (*Id.*) Alexander also prepared a complaint report in which he claimed to have witnessed this drug transaction, again with DiCecco approving the report. (Pl.'s Ex. F at 11–12.) Agostino later spoke with a Queens County Assistant District Attorney ("ADA") in his role as the arresting officer and signed a criminal complaint charging Burgess with criminal possession of a controlled substance in the fifth degree and criminal possession of a controlled substance in the seventh degree. (Defs.' Ex. A at 60:18–61:16; Defs.' Ex. J (Doc. No. 41-10) at 2–3.) After coming in to court three different times, the charges against Burgess were dropped on September 16, 2014. (Pl.'s Ex. H (Doc. No. 46-8); Pl.'s Ex. I (Doc. No. 46-9).)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). Once the moving party has satisfied its burden, "the nonmoving party must come forward with 'specific facts showing there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal citations omitted). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, a "defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

## DISCUSSION

**I.     False Arrest**

To state a claim for false arrest, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003). A confinement is "privileged" when the arrest was based on probable cause. *Torres v. Jones*, 26 N.Y.3d 742, 759 (2016). Therefore, the existence of probable cause is an absolute defense to claims for false arrest. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).

"An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed a crime." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (internal citations and alterations omitted). In determining whether an officer had probable cause, courts consider the totality of the circumstances, based on the facts available to the officer at the time of the arrest. *Id.* Where the question of whether an arresting officer had probable cause is dependent on a factual dispute, the issue should be decided by the jury. *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997).

Taking the facts in the light most favorable to Burgess, a jury crediting his version of events could find that the officers lacked probable cause for his arrest. First, Burgess's mere proximity to "others independently suspected of criminal activity, does not, without more, give rise to probable cause." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). This is true even when a person is arrested at a location known for drug sales, and when others in near proximity are found to be in possession of drugs. *Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439, 443–44

(S.D.N.Y. 1999) (no probable cause to arrest bartender where owner had been selling cocaine from behind the bar, and patrons were found with cocaine).

Second, and most important, Burgess presents facts which, if credited, cast doubt on the credibility of the officer's version of events. Critically, Burgess admits that he shook Miller's hand, and adamantly denies that he handed anything to the officers. Assuming that Burgess's version of the facts is true, and that all the officers' saw was a handshake, those observations, even in a drug prone location where one man is a known drug user, are not sufficient to give rise to probable cause. Moreover, Burgess testified that, by his observations, the police officers arrived on the scene five minutes after the men first met and shook hands. This temporal separation between the handshake and the officers' arrival, if believed by the jury, could cast doubt on whether the officers actually observed what they said they saw.

Defendants maintain that

> [t]here is nothing in the record that supports plaintiff's bold and conclusory assertion that defendant only arrived *at the location* when plaintiff and Mr. Miller began to walk away. To the contrary, all defendants indisputably testified that they arrived at the location and observed plaintiff and Mr. Miller facing each other and touching hands before walking away.

(Reply in Supp. of Mot. (Doc. No. 49) at 5 n.3.) (emphasis in original). Granted, Burgess does not know where the officers were when they first observed him and Miller, but he is competent to testify to when he first observed the officers arrive on the scene in relation to the critical "handshake." Although there is much ado about how far the officers were from Burgess and Miller when they first observed the men, and how fast the car was going, and how long it took for the officers to pull up next to them, it is for a jury to assess the competing facts on the timing of events, and the relative vantage points of the officers and Burgess in order to determine if the officers saw what they say they saw.

6

Citing a number of cases, the defendants claim that where the police witness an exchange between two suspects, and drugs are recovered from one, there is probable cause to arrest the other. However, in each case, there was no dispute as to the fact that one or more officers actually witnessed the suspect hand something to the officer in exchange for money. *See Smith v. City of New York*, No. 04-CV-3286 (TPG), 2010 WL 3397683, at *8 (S.D.N.Y. Aug. 27, 2010) (probable cause found where no dispute that suspect had just engaged in a hand-to-hand drug sale, and where the suspected buyer was found to have cocaine); *Sam v. Brown,* No. 00-CV-4170 (JG), 2002 WL 31102644, at *1, 4 (E.D.N.Y. Sept. 10, 2002) (denying habeas claim based on an allegedly unlawful arrest because the arresting officer had probable cause once he witnessed the petitioner engage in a suspected drug sale and recovered drugs from the buyer); *U.S. v. Roland*, No. 11-CR-372 (RPP), 2012 WL 74989, at *5 (S.D.N.Y. Jan. 10, 2012) (finding probable cause and denying suppression where the police had witnessed defendant make several drug sales, and recovered drugs from a buyer). On this motion, the Court must accept as true Burgess's testimony that the officers did not – and could not – see anything pass from Burgess to Miller. If credited by a jury, Burgess's could make out a claim for false arrest.

Burgess relies on *Perez v. Duran*, a case in which the court denied summary judgment in a case similar to this one. 962 F. Supp. 2d 533 (S.D.N.Y. 2013). There, taking the version of the facts in the light most favorable to the plaintiff, the police observed father and son "high five" one another on the street. Both men denied exchanging anything during the encounter. In contrast, the police officers' testified that the specifically saw an exchange of a clear plastic bag containing powder in exchange for cash. The plaintiff son left the scene into a nearby building, and the officers arrested the father, recovering drugs from him. The son returned to the scene,

and he, too, was arrested. The officers did not recover any drugs from the son, but found $444 in cash.

In denying summary judgment on the son's false arrest claim, Judge John Koeltl held: "That the plaintiff's father was found to be in possession of crack cocaine after shaking hands with the plaintiff is insufficient to establishing probable cause to arrest." *Perez*, 962 F. Supp. 2d at 539-40 (citation omitted). Judge Koeltl noted that "defendant cites no case that suggests that probable cause to arrest a suspected drug seller exists based on the recovery of drugs from a suspected buyer without evidence of any exchange between a suspected seller and a suspected buyer found to possess drugs." *Id*. at 539 (collecting cases).

In this case, a jury crediting Burgess's version of events would be left without critical information going to probable cause. The jury could credit Burgess that the officers were never in a position to see the handshake. And even if they did see the handshake, the jury could find credible Burgess's testimony that he did not hand anything to Miller, and that the officers were lying when they say they saw such an exchange. As in *Perez*, these material disputes of fact preclude granting summary judgement.[3]

I.      **Denial of the Right to a Fair Trial**

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). A person suffers a denial of the right to a fair trial when an "(1) investigating official (2) fabricates information (3)

---

[3] The defendants argue that they are entitled to qualified immunity because they at least arguably had probable cause to arrest Burgess, and therefore their actions were reasonable. (Mot. for Summ. J. at 19–20.) A jury must resolve these disputed issues of fact in order to resolve the qualified immunity issue. *McClellan v. Smith*, 439 F.3d 137, 149 (2d Cir. 2006) ("resolution of genuine factual issues is inappropriate on motions for summary judgment based on qualified immunity").

that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). "A plaintiff need not have proceeded to a full trial on the merits in order to have an actionable section 1983 claim based on the denial of a fair trial." *Marom v. City of New York*, No. 15-CV-2017 (PKC), 2016 WL 916424, at *9 (S.D.N.Y. Mar. 7, 2016); *see also Ricciuti*, 124 F.3d at 127, 130 (allowing a section 1983 claim for the denial of a fair trial to proceed, despite the fact that all charges had been dismissed prior to trial). A claim for denial of the right to a fair trial because of fabrication of evidence is an independent claim that can proceed alongside a false arrest claim. *Garnett*, 838 F.3d at 278.

Here, Burgess has alleged that defendant Agostino prepared an arrest report in which he falsely claimed to have witnessed him selling drugs. (Pl.'s Ex. F at 8–10.) Defendant Alexander entered this report, and defendant DiCecco was the supervisor who approved it. (*Id.*) Because both were also present when Burgess was arrested, they would have been aware if Agostino's statements were false. In addition, Alexander prepared a complaint report containing the same allegedly false claims, which DiCecco also approved. (Pl.'s Ex. F at 11–12.) Agostino also spoke directly with a Queens County Assistant District Attorney as the arresting officer and signed the criminal complaint charging Burgess. (Defs.' Ex. A at 60:18–61:16.) Together, these allegations suggest that the defendants lied about witnessing him selling drugs, created or approved false paperwork containing those lies, and forwarded that information to prosecutors, forcing him to defend himself in a criminal action.[4]

---

[4] The defendants attempt to argue that Burgess has failed to allege all the elements of deprivation of the right to a fair trial because "nowhere in plaintiff's complaint or amended complaint is there any mention that the defendants forwarded the allegedly fabricated evidence to prosecutors." (Reply in Supp. of Mot. at 8.) This assertion is contrary to the record. (Am. Compl. at 3–4.)

9

The defendants argue that because Burgess is bringing a claim grounded in the Fourth Amendment (his false arrest claim), he cannot bring a separate claim based on the same facts under the Due Process Clause. (Mot. for Summ. J. at 21.) Here, however, the plaintiff's claims for denial of the right to a fair trial and false arrest are not based on the same facts. The false arrest claim is based on the allegation that the defendants arrested Burgess without probable cause, while the denial of the right to a fair trial claim is based on the allegation that defendants falsified evidence and then forwarded that evidence to prosecutors.

The defendants also argue that even if the statements made in the arrest paperwork were false, they are entitled to immunity because these statements were testimonial, citing *Rehberg v. Paulk*, 566 U.S. 356 (2012). (Mot. for Summ. J. at 23.) As the Second Circuit has made clear, *Rehberg* established immunity for officers for their grand jury testimony, which does not apply to police reports. *Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015). *Rehberg* is inapplicable here.

The defendants also assert that, because this allegedly fabricated testimony would be inadmissible hearsay, it could not have ever influenced a jury. (Mot. for Summ. J. at 42.) However, fabricated evidence does not need to be admissible in order to support a denial of the right to a fair trial claim. *Rucks v. City of New York*, 96 F. Supp. 3d 138, 149–50 (S.D.N.Y. 2015).

Because there is a genuine dispute of fact as to whether the defendants witnessed a transaction or fabricated evidence, summary judgment on the denial of the right to a fair trial claim is denied.

## II. Malicious Prosecution Under Section 1983

To bring a case for malicious prosecution under section 1983, plaintiffs must meet the elements of malicious prosecution under state law. *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010). Under New York State law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 161. The defendants do not dispute that a criminal proceeding was terminated in Burgess's favor, but argue that he has failed to satisfy the other three requirements. (Mot. for Summ. J. at 25.)

The defendants argue that although a criminal prosecution was initiated against Burgess, it was initiated by the Queens County District Attorney's office, not by the defendants. (*Id.*) Normally, "once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." *Douglas v. City of New York*, 595 F. Supp. 2d 333, 342 (S.D.N.Y. 2009). However, there is an exception to this general rule for when police officers are accused of providing false information to the prosecutor that influences their decision about whether to prosecute. *Id*. Because Burgess alleges that the defendants falsified their reports by claiming to witness a drug deal, this case falls under this exception, and the police officers are proper defendants.[5]

---

[5] Defendants argue that only Agostino ever spoke to the Queens County ADA, and therefore, Alexander and DiCecco cannot be proper defendants. This argument ignores the fact that Alexander created the Arrest Report and the Complaint Report, and DiCecco approved them. (Pl.'s Ex. F at 4–5, 8–12). Both documents contained the allegedly false claim that police witnessed a drug deal. (*Id.*)

11

The defendants again argue that they had probable cause to arrest the plaintiff, which is a complete defense to a claim for malicious prosecution. However, as discussed above, there are disputed issues of fact as to whether there was probable cause.

Similarly, the defendants argue that malice should only be inferred where probable cause is totally lacking. (Mot. for Summ. J. at 27.) They argue that because they had probable cause, there was no malice. As discussed above, the existence of probable cause is disputed. Therefore, summary judgment cannot be granted on Burgess's malicious prosecution claims.

### III. State Law Malicious Prosecution

The elements of malicious prosecution under section 1983 and under New York State law are the same. *Manganiello*, 612 F.3d at 160–61. Therefore, for the reasons discussed above, summary judgment is denied with respect to Burgess's state law malicious prosecution claim.

Defendants argue that, aside from the merits, this claim should be dismissed because Burgess has failed to comply with New York General Municipal Law §§ 50-e and 50-i. (Mot. for Summ. J. at 28.) General Municipal Law § 50-e requires that plaintiffs bringing state law tort claims against a municipal entity or its employees acting in the scope of employment must file a Notice of Claim ("NOC") within 90 days from the date on which the cause of action accrues. N.Y. Gen. Mun. L. § 50-e(1)(a). General Municipal Law § 50-i requires that plaintiffs commence any such action within a year and 90 days from the date on which the cause of action accrues. N.Y. Gen. Mun. L. § 50-i(1).

The defendants assert that because Burgess's NOC was filed on October 7, 2014, more than 220 days after the February 28, 2014 incident, it was untimely. (Mot. for Summ. J. at 29.) However, because termination of the criminal proceeding in the plaintiff's favor is an element of a malicious prosecution claim, *see Manganiello*, 612 F.3d at 161, the claim did not accrue until

12

September 16, 2014, the date that the prosecutor terminated the criminal case in his favor. *Bailey v. City of New York*, 79 F. Supp. 3d 424, 451 (E.D.N.Y. 2015). Therefore, his NOC and suit were both timely.

The defendants also argue that Burgess's NOC was defective because it did not contain the names each of individual defendant. There is currently a split among the Appellate Divisions as to whether or not this is a requirement. Although the First Department currently does require the individual defendants to be listed, the Second, Third, and Fourth Departments have rejected this requirement. *Alvarez v. City of New York*, 134 A.D.3d 599, 605–07 (1st Dep't 2015); *Blake v. City of New York*, 148 A.D.3d 1101, 1105–06 (2d Dep't 2017); *Pierce v. Hickey*, 129 A.D.3d 1287, 1288–89 (3d Dep't 2015); *Goodwin v. Pretorius*, 105 A.D.3d 207, 215–16 (4th Dep't 2013). Because the Court of Appeals has not ruled on this issue, "we must make our best estimate as to how New York's highest court would rule in this case." *Francis v. INA Life Ins. Co. of New York*, 809 F.2d 183, 185 (2d Cir. 1987). Upon reviewing the above decisions, the Court predicts that the New York Court of Appeals will follow the reasoning of the Second, Third, and Fourth Departments because the purpose of Municipal Law § 50-e is to notify governmental authorities, not individual defendants. *Goodwin*, 105 A.D.3d at 212. Accordingly, the Court concludes that there is no requirement that an NOC name each individual defendant.

Because Burgess complied with the relevant state procedural requirements, summary judgment as to his New York State law claims is denied.

IV. **State Law Respondeat Superior**

The defendants argue that Burgess's state law respondeat superior claim must be dismissed because the claim cannot proceed without the underlying state law malicious

13

prosecution claim. In light of the Court's decision to allow the state law malicious prosecution claim to proceed, summary judgment is denied as to this claim as well.

## CONCLUSION

For the reasons discussed herein, the defendants' motion for summary judgment is denied. This matter is recommitted to the assigned Magistrate Judge for all remaining pre-trial proceedings.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
      March 29, 2018

_____
ROSLYNN R. MAUSKOPF
United States District Judge